**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM FILLYAW,<br><br>Defendant. | Case No. 1:23-CR-650<br><br>Hon. Judge Matthew Kennelly<br><br>Motion to Suppress Evidence |

**WILLIAM FILLYAW'S MOTION TO SUPPRESS EVIDENCE SEIZED AS FRUITS OF UNREASONABLE SEARCH UNDER THE FOURTH AMENDMENT**

William Fillyaw, the Defendant, through his attorney Jed Stone, move this Honorable Court to suppress evidence seized in an unreasonable search under the Fourth Amendment. The search occurred while Mr. Fillyaw was being arrested by FBI Agents and Task Force Officers pursuant to an arrest warrant in an unrelated matter. FBI agents, without judicial authorization, probable cause, or consent searched Mr. Fillyaw's his backpack *after* Mr. Fillyaw was handcuffed and distanced from his backpack; having no access to the backpack. The Agent's "search incident to arrest" led to discovery of the Government's evidence against Mr. Fillyaw in the instant case. Because the "search incident to arrest" exception to the Fourth Amendment's warrant requirement cannot apply, this Honorable Court should suppress the evidence seized as the result of an unreasonable search. In support thereof, Mr. William Fillyaw states as follows:

**FACTUAL BACKGROUND[1]**

[1] Every factual claim made in this section is corroborated by body-worn camera footage and written reports of Task Force Officers and Agents.

*General Background Context*

1. Mr. William Fillyaw was arrested by an FBI taskforce, pursuant to an arrest warrant out of the Eastern District of Wisconsin, on October 28, 2022. Grp. Ex. 1, p.2.[2] The warrant authorizing Mr. Fillyaw's arrest was issued on October 26, 2022. *Id.*

2. Mr. Fillyaw was arrested in the parking lot of a private apartment complex in Gurnee, Illinois. His significant-other was present in the parking lot during the arrest, but she was not next to Mr. Fillyaw when he was confronted by the arresting Agents.

3. The Agents had no search warrant for Mr. Fillyaw's person, personal effects, or vehicles, at the time of his arrest. *See* Grp. Ex. 1, p.2 (stating the operation against Mr. Fillyaw was "an arrest operation").

*Mr. Fillyaw's Arrest*

4. Approximately eight FBI Agents and Task Force Officers, armed with AR-style rifles drawn, rushed Mr. Fillyaw, screaming at him identifying themselves as FBI.[3] Immediately, they commanded he get face-down, and lay flat on the ground in a "T" formation. *See* Grp. Ex.'s 2, 3. Mr. Fillyaw fully complied with Agent's

---

[2] Grp. Ex. 1 is a copy of TFO Brian Ploch's police report documenting the arrest of Mr. Fillyaw, and search of Mr. William Fillyaw's backpack.

[3] The Agents screamed at Mr. Fillyaw, "FBI, get the fuck on the ground, get the fuck on the ground right now, hands out like a "T" hands out like a "T" put'em to your side, DO NOT MOVE . . . listen to the commands from the man behind you . . . you see that [laser] dot? Don't fuck around."

commands. *See* Grp. Ex. 1, p.2 (stating Mr. Fillyaw was taken into custody "without incident")

5. Mr. Fillyaw laid flat on his stomach, with his arms extended in a "T" formation. See Grp. Ex.'s 2, 3. One of the Agent's standing directly in front of Mr. Fillyaw, using the laser-optic on his firearm, commanded Mr. Fillyaw to look at the dot in front of him and not "fuck around." Again, Mr. Fillyaw fully complied.

6. While face-down on the ground with his arms fully extended in a "T" formation, Agents removed an opaque black backpack from Mr. Fillyaw as they handcuffed him. *See* Grp. Ex.'s 2, 3. The Agents placed the backpack behind Mr. Fillyaw, off to the side, approximately four to six feet away and behind three FBI Agents or TFOs.[4] *See* Grp. Ex.'s 2, 3. The backpack was not within Mr. Fillyaw's reach— especially while Mr. Fillyaw was face-down in the "T" formation, looking at the laser-dot inches in front of his face and with multiple Agents standing between him and the backpack. *See id.*

7. Within approximately nine seconds from the Agent's initial rush, Mr. Fillyaw was on the ground, with the backpack removed, his hands cuffed behind his back. Within 43 seconds, Mr. Fillyaw's person was searched and he was lifted from the ground. No contraband, weapons, or other items of evidentiary value were recovered from the search of Mr. Fillyaw's person.

---

[4] The distances are approximate based upon the *limited* body-worn camera footage. Because the Agents continuously turn their body-worn cameras on and off, precises distances and footsteps taken are difficult to ascertain.

8. Simultaneously, TFO Brian Ploch took Mr. Fillyaw's backpack and carried it approximately 30 to 40 feet opposite of the direction Mr. Fillyaw.[5] Taking Mr. Fillyaw in one direction, and taking the backpack the opposite direction created a total distance of approximately 40 to 50 feet between the handcuffed Mr. Fillyaw and the backpack. *See* Grp. Ex. 4.

9. Mr. Fillyaw was handcuffed and secured by FBI Agents. There were at least 12 to 20 FBI Agents on the scene of the arrest by this time. At least 8 to 12 armed Agents stood between Mr. Fillyaw and the backpack, which at this point in the arrest operation, was in complete physical control of Agents or Officers. *See* Grp. Ex. 4. Once the backpack was 40 to 50 feet away from Mr. Fillyaw, *after the arrest*, a TFO Ploch opened it and looked through its contents. *See* Grp. Ex. 1, p.2 (stating "After his arrest I retrieved that backpack that Fillyaw was wearing. Search incident to arrest, I opened the back pack . . ." [*sic*]); *see also* Grp. Ex. 4.

*The Search of Mr. Fillyaw's Backpack*

10. An FBI Task Force Officer, from the Cudahy, Wisconsin, Police Department, named Brian Ploch, opened Mr. Fillyaw's backpack and began to empty the contents onto the ground. An unidentified female TFO or Agent approached and asked TFO Ploch if he wanted photos taken. TFO Ploch told the unidentified female Agent he would put the items back in the backpack how he found them, so the photographs could appear how they looked when he opened the backpack.[6]

---

[5] Counsel believes TFO Brian Ploch took the backpack because of his report. *See* Grp. Ex. 1

[6] During this time, at least one Waukegan Police Department Detective, Luis Agalianos, was present. Detective Agalianos was not wearing his body-worn camera.

11. TFO Ploch, re-emptied Mr. Fillyaw's backpack, piece-by-piece, item-by-item. This was a search, labelled as a "search incident to arrest." Grp. Ex. 1, p.2. The items recovered— an alleged firearm, alleged cannabis, and alleged controlled substances— give rise to the charges against Mr. Fillyaw before this Honorable Court.

## STANDARD OF REVIEW

12. Because Mr. Fillyaw seeks suppression of evidence in this case, he "bears the burden of proving a legitimate expectation of privacy in the area searched." *United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) (citing *Rawlings vs. Kentucky*, 448 U.S. 98, 104 (1980)). "A reasonable expectation of privacy is infringed when (1) the defendant exhibits an actual or subjective expectation of privacy and (2) the expectation is one that society is prepared to recognize as reasonable. *Id.* (citing *Katz v. United States*, 389 U.S. 347, 361 (1967). If Mr. Fillyaw establishes a "'reasonable expectation' of privacy" in his searched backpack, he establishes "a *prima facie* case" of a Fourth Amendment violation. *See id.*

13. Government seizures of "personal property [are] *per se* unreasonable within the meaning of the Fourth Amendment unless [they] are accomplished pursuant to

---

Pursuant to 50 ILCS 706/10-1 *et seq.*, known as the "Law Enforcement Officer-Worn Body Camera Act", Detective Agalianos was required to be wearing his body-worn camera during this arrest operation— he was not. *See* Section 706/10-20(a)(3) (requiring body-worn cameras be "turned on at all times when the officer is in uniform and . . . engaged in any law enforcement-related encounter).

Noteworthy, a second Waukegan Police Department Detective, Chris Harris, is present on the scene of the arrest; his BWC footage also appears missing from discovery.

a judicial warrant issued upon probable cause." *United States v. Jackson*, 598 F.3d 340, 346 (7th Cir. 2010). If law enforcement has "probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the Court has interpreted the Amendment to permit seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *United States v. Place*, 462 U.S. 696, 701 (1983). The Government must prove by a preponderance of the evidence that an exception to the warrant requirement applies. *See United States v. Basinski*, 226 F.3d. 829, 833 (7th Cir. 2000). The Government's failure to prove an exception to the warrant requirement requires suppression of the evidence. *Id.* at 834. Whether an exception to the warrant requirement is reasonable requires an analysis based upon the totality of the circumstances. *See United States v. Salazar*, 60 F.4th 474, 477-78 (7th Cir. 2023).

**ARGUMENT**

14. The Agents and TFOs who arrested Mr. Fillyaw arrested him pursuant to an arrest warrant, issued approximately two days before his arrest. Grp. Ex. 1, p.2. No search warrant was issued to search Mr. Fillyaw's person or personal effects. *See id.* The Agents had no independent and particularized probable cause or reasonable suspicion to seize Mr. Fillyaw's backpack, or to perform an independent *Terry*-frisk. *See id.* TFO Ploch, who searched Mr. Fillyaw's backpack, documented the backpack

were "search[ed] incident to arrest." Grp. Ex. 1, p.2. Thus, the Government relied upon an exception to the warrant requirement.

15. The Fourth Amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

16. The United States Supreme Court found in *Katz*, the Fourth Amendment protects people, not places, shifting its Fourth Amendment analysis from a property-based focus to an individual-focus. *See* 347 U.S. at 351 (stating "the Fourth Amendment protects people, not places"). In *Katz*, Justice Harlan's concurrence set forth what is now known as the *Katz* test. *See id.* at 361. Under current and long-standing Fourth Amendment jurisprudence, a search within the Fourth Amendment is determined by the *Katz* test. *Id.* Under *Katz*, a search occurs when a State-Actor infringes on an individual's "exhibited subjective expectation of privacy, and . . . the expectation is one that society is prepared to recognize as reasonable." *See Mendoza*, 438 F.3d at 795.

17. Under Fourth Amendment doctrine, "it is well-settled that warrantless searches are *per se* unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'" *Id.* at 796. The Supreme Court further held "seizures of personal property are *per se* unreasonable" unless prescribed by a judicial warrant.

*Place*, 462 U.S. at 700-01. Here, no search warrant existed and there was no probable cause to obtain a search warrant.

18. One such exception to the Fourth Amendment's warrant requirement is a "search incident to arrest." An officer may search the person or an area within reaching distance to remove any weapons or seize evidence to "prevent concealment or destruction" incident to a lawful arrest. *See Chimel v. California*, 395 U.S. 752, 762-63 (1969); *see also United States v. Hill*, 818 F.3d 289, 295 (2016) (stating "a search incident to arrest is valid if it does not extend beyond '"the arrestee's person and the area within his immediate control"'). When Agents seized and secured Mr. Fillyaw, they took his backpack far beyond zone of immediate control. *See Hill*, 818 F.3d at 295. See Grp. Ex.'s 2, 3.

19. After Mr. Fillyaw was placed face-down, and in a "T" formation, the Agents moved Mr. Fillyaw's backpack another approximate 40 feet away, before their search. *See* Grp. Ex. 4 "If an arrestee cannot possibly reach the area an officer wants to search, neither justification for [the search incident to arrest] exception is present, and it does not apply." *Salazar*, 60 F.4th at 477 (citing *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

20. At the time Agents searched Mr. Fillyaw's backpack, it was approximately 40-50 feet away from him. *See* Grp. Ex. 4. At this time Mr. Fillyaw was calm, compliant, handcuffed, and at or in an Agent's vehicle. And at this time, Mr. Fillyaw had *many* armed FBI agents *between* him and the backpack. Under these circumstances, it would not be possible for Mr. Fillyaw to obtain his backpack,

obtain a weapon, or destroy evidence. *See id.* at 477. Further, no circumstances indicated Mr. Fillyaw was a safety concern, as reflected by Mr. Fillyaw's calm and compliant nature. *See id.* at 476, 478 (describing the arrestee's "agitat[ation]," "desper[ation]," or "unpredictable" nature may support reasonably support the officer safety justification at the time of searching). As such, no justification for a search incident to arrest was present, and therefore, it cannot apply. *See id.* at 477.

21. In *Salazar*, police acting on an arrest warrant arrested the defendant in a bar. *Id.* at 475. The defendant was sitting at the bar with a jacket draped over his chair, and a jacket draped over an empty chair on his left side. *Id.* The officers approached the defendant and informed him they had a warrant for his arrest. *Id.* The defendant, appearing agitated, "loudly asked why he was being arrested and who called the police." *Id.* at 475, 478. The defendant stood in between the two chairs as he was handcuffed. *Id.* at 475. Officers searched the defendant and then searched the two jackets within reaching distance of the defendant. *Id.* at 476. Although the defendant was handcuffed, his back was to the chairs with the jackets and "no officers stood between him and the chair with the black jacket on it." *Id.* While the defendant's hands were cuffed behind his back, and his back to the chairs, an officer lifted one of the jackets and felt a gun. *Id.* at 475-76. The officer removed a gun and identification from the jacket.

22. The defendant in *Salazar* challenged the search as an unreasonable search incident to arrest. *Id.* at 476. The defendant contended because "he was already secured" the search incident to arrest exception did not apply. *Id.* While the lower

court stated the reasonableness was "very close" the search was not unreasonable. *Id.* "The court explained that despite being cuffed and surrounded by officers, Salazar was so close to his jacket an 'agitated' . . . it would have been 'possible' albeit 'very difficult' for him to 'have reached that gun.'" *Id.* The Seventh Circuit in *Salazar* affirmed the lower court's reasoning. *See id.* at 478 (stating the court "did not clearly err in concluding that Salazar could have gained access to the black jacket").

23. The defendant in *Salazar* relied upon *United States v. Davis*, 997 F.3d 191 (4th Cir. 2021) to argue "*Gant* created a two-part test for the validity of a search incident to arrest." *Id.* at 477. Under this "test" the defendant argued he must be "unsecured" and "within reaching distance" of the searched area. *Id.* The Seventh Circuit rejected this contention, finding this would create a "divide and conquer analysis" precluded by a totality of the circumstances test. *Id.* at 477-78. The Court found *Salazar* was unlike *Davis* because, in *Davis*, the arrestee was "cuffed and face down on the floor, which 'severely curtail[ed] the distance he could reach' and disabled him from making trouble." *Id.* at 478. Unlike *Davis*, in *Salazar*, the defendant "remained standing, agitated, and adjacent to the jacket . . . and no officer stood between him and the jacket." *Id.* Under those circumstances, the Court found it reasonable to think the jacket posed a threat to officers. *Id.* The facts leading to the search in Mr. Fillyaw's case are similar to *Davis*, and unlike *Salazar*. *See id.*; *see also* Grp. Ex.'s 2, 3.

24. Like the defendant in *Davis* and unlike the defendant in *Salazar*, Mr. Fillyaw was placed on the ground face down in a "T" formation. *See id.*; *see also* Grp. Ex.'s 2, 3. Unlike the defendant in *Salazar*, who was characterized as agitated, Mr. Fillyaw was calm, compliant, and taken into custody "without incident." *See id.*; *see also* Grp. Ex. 1. Unlike the defendant in *Salazar*, Mr. Fillyaw was *at a minimum* 30 feet away from his backpack at the time it was searched.[7] *See id.* at 475-76. And unlike the defendant in *Salazar*, *many* FBI Agents, and Task Force Officers, all armed with drawn AR-type rifles stood between Mr. Fillyaw and his backpack, before and at the time the backpack was searched. *See id.* at 476, 478 (underscoring "no officer stood between [the defendant] and the jacket"); *see also* Grp. Ex.'s 2, 3, 4.

25. Based upon these facts, "it was inconceivable" Mr. Fillyaw could have reached his backpack. *See id.* 478.; *see also* Grp Ex. 4. Mr. Fillyaw was not only secured, but he was a great distance from the backpack, not adjacent to it like the defendant in *Salazar*. *See id.*; see also Grp. Ex.'s 2, 3, 4. Based upon Mr. Fillyaw's calm and compliant nature, it would be unreasonable to view him as "unpredictable" like the defendant in Salazar. *See id.*

26. Finally, in *Salazar*, the defendant, relied upon *United States v. Leo*, 792 F.3d 742 (7th Cir. 2015), for the contention that his search incident was unconstitutional. *See Salazar*, 69 F.4th at 478-79. The Seventh Circuit rejected this reliance, finding that *Leo* and *Terry* have been recognized as "distinct in 'purpose, character, and extent' from searched incident to arrest." *Id.* at 479. However, the *Leo* court

[7] This is a generous approximation, because the search took place over two parking spot-lengths away from Mr. Fillyaw while he was handcuffed and surrounded by Agents.

acknowledged the unreasonableness of a backpack search when the backpack was not in the "'immediate control'" of a handcuffed arrestee who had no possession of the backpack when it was searched. *See Leo* 792 F.3d at 750 (analogizing search of backpack during *Terry* frisk to the search incident to arrest in *United States v. Tejada*, 524 F.3d 809, 811-12 (7*th* Cir. 2008)); *see also United States v. Knapp*, 917 F.3d 1161, 1169 (parenthetically incorporating *Leo's* holding and reasoning to a search incident to arrest).

27. Because the justifications for "search incident to arrest" were not present during Mr. Fillyaw's arrest, it cannot apply as an exception to the Fourth Amendment's warrant requirement in Mr. Fillyaw's case. *See Salazar*, 60 F.4th at 477. Because of the search of Mr. Fillyaw's backpack required a warrant or consent, and neither were present, the search is *per se* unreasonable. *See id.* at 477 (stating warrantless searched are *per se* unreasonable when an exception does not apply). Because the search was unreasonable under the Fourth Amendment, the fruits of the search must be suppressed.

WHEREFORE, Mr. Fillyaw prays this Honorable Court find the search of his backpack was an unreasonable search, and suppresses all evidence obtained as a result of the search. Further Mr. Fillyaw prays this Honorable Court set a briefing schedule, allowing the Government to respond to this motion to suppress, and permitting the Defendant to reply, if necessary.

Respectfully submitted,

______________________________

Attorney for William Fillyaw

**STONE & ASSOCIATES, LTD.**
**325 Washington St., Suite 400**
**Waukegan, IL 60085**
**(847)336-7888**
jstone@jedstone.com
**ARDC# 2745127**

POLICE CUDAHY SINCE 1906 PROTEGERE ET SERVIRE WISCONSIN

# Cudahy Police Department — Incident Report

Date: 10/28/2022

| | | | |
|---|---|---|---|
| Incident: Law Enforcement Agency Assist | | | |
| Incident Report Number: 22-014494 | Between: Date - Time | And/At: Date-Time: 10/28/22 | 06:09 |
| Incident Location: 1600 Wedgewood Dr | | | |
| CFS Code-1: 9078 | CFS Code-2: | CFS Code-3: | Offense Code-4: |
| CFS Code-5: | CFS Code-6: | CFS Code-7: | CFS Code-8: |

| | | | |
|---|---|---|---|
| | Name (*Last, First, Middle*) | DOB: | Race/Sex |
| Address: (*Address, City, State, Zip*) | | | Phone 1 |
| Employer | | | Phone 2 |
| Employer Address | | | Work Phone # |
| | Name (*Last, First, Middle*) | DOB: | Race/Sex |
| Address: (*Address, City, State, Zip*) | | | Phone 1 |
| Employer | | | Phone 2 |
| Employer Address | | | Work Phone # |

CFS Code-1: 9078

**SUMMARY**

On 10/28/2022 the FBI-MASSTF conducted an operating at 1600 Wedgewood Dr, Gurnee, IL, to take William Fillyaw into custody for an outstanding Federal Arrest Warrant.

| | | | | |
|---|---|---|---|---|
| | Vehicle Information: (*Year, Make, Model, Style, Color*) | | | |
| License Number: | State: | Expiration Year: | Vin: | Insurance Company: |
| Other Vehicle Information: | | | | NCIC# |
| Reporting Officer(s): Ploch, Brian | | | Payroll Number : PLOCB | Report Date: 10/28/2022 |
| Time Received: 06:09:37 | Time Cleared: 09:05:46 | Unit(s) Assigned: 245 | Pages: 1 Of 6 | |
| Reviewed by: Andrews, Anthony E. | | Payroll Number : 2100 | Copy To | |

Incident Report Number: 22-014494

Arrest and Surveillance Reports_

DEFENDANT'S EXHIBIT Group 1

Blumberg No. 5114

| **Cudahy Police Department** | | **Continuation** |
|---|---|---|
| Incident Report Number<br>22-014494 | Incident Location:<br>1600 Wedgewood Dr | Incident Date:<br>10/28/2022 |

**NARRATIVE**

## SOURCE:

On 10/28/2022 I, TFO Brian Ploch, was involved in operation to take William Fillyaw into custody. Fillyaw is suspected of being involved in a homicide that occurred early this month in Waukegan, Illinois. He was also suspected of being involved in an arson of the homicide suspect vehicle in Pleasant Prairie, WI. FBI Special Agent Jacob Dettmering obtained a federal arrest for Fillyaw on 10/26/2022. Over the past week MASSTF surveillance observed Fillyaw coming and going from an apartment building at 1600 Wedgewood Dr, Gurnee, IL. Additionally, surveillance observed him operating two full size vans, one maroon and one dark blue or black. The vans were frequently observed parked in the lot near that apartment building.

On the morning of 10/28/2022 MASSTF in coordination with the Waukegan Police Departments Gang Unit and the Chicago FBI briefed an arrest operation at the Waukegan Police Department. At approximately 0845 hours perimeter surveillance units observed Fillyaw entering the apartment complex driving the maroon van. Fillyaw parked the van in the rear lot as previously observed. He exited this van and opened the drivers side rear passenger compartment. Fillyaw retrieved a black back pack from the van, shut the door and began walking towards the apartment buildings entrance door. An established arrest team took Fillyaw into custody near the door and without incident.

After his arrest I retrieved that backpack that Fillyaw was wearing. Search incident to arrest, I opened the back pack and observed a firearm, suspected marijuana, suspected cocaine, suspected heroin and a large amount of US Currency in the back pack. The back pack and it's contents were photographed and secured in SA Dettmering's vehicle.

SA Dettmering and I later transported the back pack and it's contents to the Waukegan Police Department's Gang Intel unit. SA Dettmering began drafting search warrants for the two vans and Fillyaw's apartment which was identified by management as unit #410.

## EVIDENCE:

As previously mentioned, I began preliminarily processing the evidence. The following items of evidentiary value were located in the back pack Fillyaw was wearing during his arrest.

| Reporting Officer(s): | Payroll Number : | Pages: |
|---|---|---|
| Ploch, Brian | [illegible] | 2 of 6 |

| **Cudahy Police Department** | | **Continuation** |
|---|---|---|
| Incident Report Number: 22-014494 | Incident Location: 1600 Wedgewood Dr | Incident Date: 10/28/2022 |

Inside of the back pack I located an open vacuum sealed back with two sandwich bags inside. Each sandwich bag contained a white substance consistent with cocaine. I subjected a representative sample of the suspected cocaine to the Scott Reagent Modified Field Test, a commonly utilized field test to check for the probable presence of cocaine. I received a positive reaction on that test. I then weighed the sandwich bags of cocaine together and found them to weigh 199.6 grams.

In the back pack I located a sandwich bag with 16 smaller corner cuts inside. The corner cuts contained a chunky off white substance consistent with crack cocaine. I subjected a representative sample of one of those corner cuts to the Scott Reagent Modified Field Test, a commonly utilized field test to check for the probable presence of cocaine. I received a positive reaction for the probable presence of cocaine base (crack). I weighed each corner cut separately and found the bags to weigh 3.5g, 3.7g, 3.6g, 3.4g, 3.6g, 3.6g, 3.6g, 3.6g, 3.5g, 3.4g, 3.5g, 3.5g, 3.6g, 3.5g, 3.7g, 3.6g respectively. The crack was packaged in 1/8 ounce quantities frequently referred to as "eight balls" or "balls." Due to my training and experience I know that this is intended for street level sales.

Inside of the back pack I located a sealed vacuum seal bag. Inside of that bag was a sandwich bag. Inside of the sandwich bag I located three square shaped blocks wrapped in plastic. The blocks were a tannish substance consistent with heroin. I subjected a sample of the suspected heroin to the Meckes Reagent Field Test, a commonly utilized field test to check for the probable presence of heroin. I received a positive reaction for the presence of heroin. I then weighed the heroin blocks separately and found them to weigh 126.2 grams, 126.2 grams and 126.7 grams respectively.

Next, I located a sock inside of the back pack containing two sandwich bags. The first bag contained a white powdery substance resembling powder cocaine. This suspected cocaine did not have the chemical smell consistent with cocaine. I subjected this substance to several field tests and received inconclusive results. Further testing will be needed to identify the substance.

The second bag collected from within the sock contained 5 knotted corner cuts. 1 of those corner cuts contained an off white chunky substance consistent with crack. The other corner cuts contained a tan substance consistent with heroin. I subjected a representative sample of the suspected cocaine to the Scott Reagent Modified Field Test and a sample of the suspected heroin to the Meckes Reagent Field Test. I received a positive reaction for the probable presence of cocaine base (crack) and heroin on the respective tests. I then weighed the corner cut of cocaine and found it to weigh 5.0 grams. I then

**Cudahy Police Department** | **Continuation**

| Incident Report Number | Incident Location: | Incident Date: |
|---|---|---|
| 22-014494 | 1600 Wedgewood Dr | 10/28/2022 |

weighed the corner cuts of heroin and found them to weigh 5.5 grams, 5.5 grams, 5.2 grams, and 5.3 grams.

I also located a large vacuum sealed bag containing a green leafy substance consistent with marijuana. There were no field test available for marijuana. I weighed the suspected marijuana with it's packaging and found it to weigh 489 grams.

I located numerous identifiers for William Fillyaw in the back pack including a State of Illinois issued ID card and credit cards. I also located an ID bearing the name "William Davis." The photo of the ID for William Davis resembled Fillyaw. It was later determined to be a fake Illinois ID.

I also located US Currency throughout the back pack. Most of the cash was in $20 dollar denominations however there were some $1's, $5's, $10's, $50's and $100's. I counted the US Currency in the presence of Special Agent Jacob Dettmering. In total there was $9,436 dollars.

In regards to the firearm located in the back pack. The firearm is described as a dark green handgun with a black magazine and a red dot sight affixed to the top. The firearm was loaded with 14 rounds of ammunition however there was not a round chambered. There was no serial number on the firearm. on the gun was the inscription "PF940C Polymer80" on the slide and, "I'll be your Huckleberry" on the back of the firearm. Polymer80 firearms are frequently referred to as "Ghost Guns" and in my experience do not have serials numbers to identify them.

The evidence mentioned here and the back pack with the rest of it's contents remained in the custody of SA Dettmering and I. They were ultimately transported back to the FBI Milwaukee Field Office to be entered into property.

In total located on Fillyaw's person during his arrest was 261.5 grams of a cocaine mixture, 400.6 grams of heroin, 489 grams of suspected marijuana, $9,436 dollars in US Currency and a firearm. This is consistent, based on my training and experience, as possession with intent to deliver rather than simple possession.

This conclude my involvement in this investigation at this time.

TFO Brian Ploch

| Reporting Officer(s): | Payroll Number: | Pages: |
|---|---|---|
| Ploch, Brian | [illegible] | 4 of 6 |

| Cudahy Police Department | | Continuation |
|---|---|---|
| Incident Report Number: 22-014494 | Incident Location: 1600 Wedgewood Dr | Incident Date: 10/28/2022 |

| Reporting Officer(s): | Payroll Number: | Pages: |
|---|---|---|
| Ploch, Brian | [illegible] | 5 of 6 |

**Cudahy Police Department** **Continuation**

| Incident Report Number | Incident Location: | Incident Date: |
| --- | --- | --- |
| 22-014494 | 1600 Wedgewood Dr | 10/28/2022 |

**NAMES**

**Suspect**

Fillyaw, William S U/M of 432 S Jade Ln, Round Lake,IL,60073

**Police Officer**

Ploch, Brian W/M-21 of 5050 S Lake Dr,PD, Cudahy,WI,53110
DOB: 01/01/2001

Phone 1:(414) 769-2259 Phone 2:(414) 769-2260

==========================================================================

| Reporting Officer(s): | Payroll Number : | Pages: |
| --- | --- | --- |
| Ploch, Brian | [illegible] | 6 of 6 |




DEFENDANT'S EXHIBIT 2 Group
Blumberg No. 5114


BWC_000003_F3023364_2022-10-28T13.43.05.100000Z_303.mp4
02:29
05:04


BWC_000003_F3023364_2022-10-28T13.43.05.1000000Z_303.mp4
02:32
05:04


BWC_000003_F3023364_2022-10-28T13.43.05.100000OZ_303.mp4
02:47
05:04




DEFENDANT'S EXHIBIT 3 Group

Blumberg No. 5114


09:29
03:16


03:25
09:29


09:29
03:30


09:29
03:30


09:29
03:34


QuickTime Player
File
Edit
View
Window
Help
Fri Apr 26 12:11 PM
Fillyaw MTS screenshots
BWC_000001_F3023277_2022-10-28T13.42.17.411000Z_569.mp4
04:03
09:29
26


QuickTime Player
File
Edit
View
Window
Help
Fri Apr 26 12:12 PM
Fillyaw MTS screenshots
BWC_000001_F3023277_2022-10-28T13.42.17.411000Z_569.mp4
04:03
09:29
26



QuickTime Player File Edit View Window Help
Fri Apr 26 12:12 PM
Fillyaw MTS screenshots
BWC_000001_F3023277_2022-10-28T13.42.17.4110000Z_569.mp4
04:04
09:29




DEFENDANT'S EXHIBIT 4 Group

Blumberg No. 5114


BWC_000003_F3023364_2022-10-28T13.43.05.100000Z_303.mp4
04:25
05:04


Untitled — Edited
TFO holding Mr. Fillyaw's backpack with another FBI Agent, approximately 40 to 50 feet away from Mr. Fillyaw, while he is handcuffed
FBI
04:54
05:01